UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RUSTY M. LEBLANC, ET AL | CIVIL ACTION |
| VERSUS | NO. 07-1495 |
| W-INDUSTRIES OF LOUISIANA, LLC | SECTION "N"  (1) |

## O R D E R and R E A S O N S

Before the Court are cross motions for summary judgment, filed by the Plaintiffs, Rusty M. and Christy LeBlanc and their minor children (together, "Plaintiffs") (Rec. Doc. 55) and Intervenor Dolphin Services, LLC ("Dolphin") (Rec. Doc. 57). Plaintiffs are joined in their motion by Defendant W-Industries of Louisiana, LLC ("W-Industries") (Rec. Doc. 56). After considering the Complaint, the Intervenor-Complaint, the memoranda and oppositions, and the applicable law, the Court grants the Intervenor's motion and denies the Plaintiffs' motion.

### I. BACKGROUND

At all times relevant, Rusty M. LeBlanc ("LeBlanc") was employed as a welder by Dolphin and was working aboard the Marco Polo, a tension leg oil and gas platform located in the Gulf of Mexico off the Louisiana coast and owned by Anadarko Petroleum Corporation ("Anadarko"). LeBlanc claims to have been injured by the negligence of an employee of W-Industries while working aboard the Marco Polo. After his injury, he was paid more than $170,000 in medical expenses and weekly compensation by Dolphin, which was self-insured for purposes of worker's compensation under the Longshoreman and Harbor Workers Compensation

Act, 33 U.S.C. § 901, *et seq*. ("LHWCA").

Plaintiffs sued W-Industries for his injuries, claiming negligence. On February 12, 2008, Dolphin petitioned to intervene in this case, claiming that it had a valid lien against any sums Plaintiffs recovered from W-Industries pursuant to its payments to LeBlanc for LHWCA benefits. W-Industries answered the third-party complaint, but no one raised the possibility of a waiver of subrogation until a March 2009 settlement conference. W-Industries previously filed a third-party demand against Anadarko, seeking defense and indemnity, which demand was dismissed by order of this Court on July 14, 2008. *See* Rec. Doc. 22. After the pre-trial conference held on March 5, 2009, the Court continued the trial and permitted the parties to file cross-motions for summary judgment on the subrogation issue on an expedited basis. *See* Rec. Doc. 53. Plaintiffs, joined by W-Industries, argue that the Master Services Contract ("MSC") between Dolphin and Anadarko contains a provision waiving Dolphin's subrogation rights with regard to LHWCA benefits, that such waiver is not void pursuant to the Louisiana Oilfield Anti-Indemnity Act, LA. REV. STAT. ANN. 9:2780 ("LOAIA"), and that the waiver is not inapplicable merely because Dolphin chose to self-insure the first $300,000 of its LHWCA insurance coverage. Dolphin argues that it has a right under LHWCA to recover the benefits it paid to LeBlanc and that it is not an "insurer" within the meaning of the MSC.

## II. ANALYSIS

### A. Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary

judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

**B. Interpreting the Master Services Contract**

Section 12(a) of the MSC requires Dolphin to carry insurance up to the statutory limit of the LHWCA. Pl.'s Mot. at Ex. A (MSC §12(a)). Subsection (h) states:

> (h) For liabilities assumed by the Party herein, all of the above insurance shall be endorsed to provide that:
> (1) The party's insurers waive their right of subrogation (equitable or by assignment, express or implied, loan receipt or otherwise) against Company's Indemnitees or Contractor Indemnitees, whichever is applicable.

*Id.* (MSC §12(h)). The MSC includes a rider requiring Anadarko to pay the additional premium Dolphin's insurer would charge to include the §12(h) waiver provision. The original contract is a standard, pre-printed form, and both the contract and the rider were drafted by Anadarko. As a subcontractor of Anadarko, W-Industries was an indemnitee within the meaning of §12(h). *See*

4

*id.* (MSC §12(h)(1)).

The parties agree that pursuant to the Outer Continental Shelf Lands Act, Louisiana law governs the instant case. *See* 43 U.S.C. §1333(a)(2)(A). Under Louisiana law, the interpretation of an unambiguous contract is an issue of law for the Court. *See Texas Eastern Transmission Corp. v. Amerada Hess*, 145 F.3d 737, 741 (5th Cir. 1998). "When the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE ANN. art. 2046. In addition, a contract provision is not ambiguous merely because one party can create a dispute in hindsight, *see Lloyds of London v. Transcontinental Gas Pipe Line Corp.*, 101 F.3d 425, 429 (5th Cir. 1996); *Rutgers, State Univ. v. Martin Woodlands Gas Co.*, 974 F.2d 659, 662 (5th Cir. 1992), and a court may not create an ambiguity where none exists. *See Slocum-Stevens Ins. Agency v. Int'l Risk Consultants, Inc.*, 666 So.2d 352, 357 (La. App. 1995). When the contract is not ambiguous, a court has no authority to reach beyond the four corners of the document. *See Huggs, Inc. v. LPC Energy, Inc.*, 889 F.2d 649, 653 (5th Cir. 1989).

The Court concludes that this provision of the MSC–even with the rider attached to it–is not ambiguous and does not waive Dolphin's right to subrogation for the benefits it paid to LeBlanc. The meaning of the relevant provision is clear on its face. The MSC requires Dolphin to obtain LHWCA insurance up to the statutory limits. Under LHWCA, Dolphin can meet this requirement by self-insuring in whole or in part, *see* 33 U.S.C. §932, and Dolphin obtained the requisite authorization to do so. *See* Int.'s Mot. at Ex. 2 (Self-Insurance Authorization). Under the MSC, Dolphin was required to obtain an endorsement waiving its insurer's right to subrogation on any LHWCA policies it obtained. The rider further requires Anadarko to pay the premium that Dolphin's insurer would charge for this endorsement. Nothing in this language

5

waives *Dolphin's* right to subrogation for benefits it paid pursuant to LHWCA, *see* 33 U.S.C. §933(e), or suggests that Dolphin is an "insurer" within the meaning of the MSC.[1]

While no Louisiana court has addressed the precise point presented in this motion, there is ample Louisiana precedent to support the conclusion the Court reaches today. The Louisiana Revised Statutes defines "insurer" as

> every person engaged in the business of making contracts of insurance, other than a fraternal benefit society. A reciprocal, an inter-insurance exchange, insurance exchange syndicate, or a Lloyd's organization is an "insurer." . . .

LA. REV. STAT. ANN. §22:5(10). Insurance is defined as "a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies." LA. REV. STAT. ANN. §22:5(9)(a). In the context of the Louisiana Motor Vehicle Safety Responsibility Law, the Louisiana Supreme Court has held that "self-insurance is, in actuality, not insurance at all," *Hearty v. Harris*, 574 So.2d 1234, 1237 (La. 1991), and went on to note that

> [w]hile Louisiana courts have consistently recognized that a certificate of self-insurance indicates the self-insurer possesses sufficient assets to satisfy judgments if found legally liable, the courts have refused to consider a certificate of self-insurance an insurance "policy."

*Id.* at 1238 (citing cases). Closer to the instant issue, the Louisiana Supreme Court has held in the context of the state worker's compensation program that "[s]elf-insurance is simply one method of complying with [the law]; it is not the equivalent of an insurance policy," and that a company that self-insures is not an "insurer." *Bowens v. General Motors Corp.*, 608 So.2d 999, 1003 (La. 1992). Both relevant statutory language and analogous cases support the conclusion this Court reaches today.

---

[1] Further, had the contract envisioned waiving Dolphin's right to subrogation, Anadarko could have done so simply by inserting "The party or" at the beginning of the relevant sentence–as, indeed, is the case with many similar MSCs.

Additionally, though the Court finds that the relevant contractual provision is not ambiguous, were it to look to actual course of dealing to determine the provision's meaning, there is nothing that suggests that at the time of contracting, the parties understood the agreement any differently than the Court does today. Dolphin submitted a Certificate of Liability Insurance to Anadarko on November 3, 2006, prior to commencing work. This certificate is clearly notated to show that the additional insured and waiver of subrogation provisions had been complied with "as respects General Liability and Automobile Policies," but does not mention waiver of subrogation as to worker's compensation in general or LHWCA specifically. Int.'s Mot. at Ex. 3. Nothing in the record suggests that Anadarko objected or requested additional documentation to ensure compliance with the contract.

Finally, the Court finds inapposite the cases that Plaintiffs cite to in support of their contention that "Dolphin's status as a self-insurer is irrelevant as the 'waiver of subrogation' clause pertains to Dolphin's insurance obligations . . . ." Pl.'s Mot at 4. W-Industries cites to *In re Gulf & Midlands Barge Line, Inc.*, 509 F.2d 713 (5th Cir. 1975)–a case decided under maritime law–to the effect that a party's

> self-insurance program and the prohibition against the contractor's procuring insurance for 'excepted perils' were part of an agreement as to who should procure insurance. Because the government elected to be self-insured, its waiver of the contractor's liability was analytically identical to, and served the same function as, an agreement of one party to require its insurer to waive subrogation rights against the other party. Indeed, with one party self-insuring, this result could be achieved in no other way.

*Id.* at 723. The cited language does rather less than prove that "self-insurers are to be treated as if insurance was procured through a commercial carrier," as Plaintiffs suggest. Pl.'s Mot. at 5. The passage comes from a section of the opinion in which the Fifth Circuit discusses whether the waiver of liability in question–in a contract between NASA and a small barge towing company

in which NASA shifted the risk of liability to itself in return for a lower contract price–was valid under a particular doctrine unique to maritime law that generally prohibits such liability-shifting. The Circuit noted (in a passage just before the cited language) that it had recently crafted a three-factor test to determine instances in which such liability-shifting was valid. One factor in that test was whether the liability-shifting contract in question "require[d a party's] insurer to waive its subrogation rights against the other party." *Id.* The Circuit concluded that the waiver of liability before it in *Gulf & Midlands* was analogous to the third factor in this test (and the liability-shifting contract was valid), precisely because NASA was self-insured and thus there *was no insurer to waive subrogation*. The analogy being made in *Gulf & Midlands*, then, is between a waiver of liability in a self-insurance context and a waiver of an insurer's right to subrogation, not between a policy of insurance that waives subrogation and a program of self-insurance that does no such thing.

W-Industries also cites to *Dow Chem. Co. v. M/V ROBERTA TABOR*, 815 F.2d 1037 (5th Cir. 1987), but the case gives little support to its position and even tends to undercut it. In *Dow Chemical*, which was decided under admiralty law, the charter agreement in question included a provision requiring the charterer to maintain certain forms of insurance and to name the vessel owner as an additional insured with a waiver of subrogation. However, the agreement allowed the charterer to self-insure, in which case it would pay the vessel owner for any losses and would indemnify the owner for any claims that would have been covered by insurance, including reasonable attorneys' fees and costs. *Id.* at 1039. Unlike the present case, then, two parties made provisions in the contract for the possibility of self-insurance. More to the point, no party argued and the Fifth Circuit never held that a self-insured party was an "insurer" for purposes of a

waiver of subrogation in a contract.[2]

### III. CONCLUSION

Considering the foregoing, the Court concludes that Dolphin is not an insurer within the meaning of the MSC and did not waive its right to subrogation. Accordingly, the Intervenor's motion is **GRANTED** and Plaintiffs' motion is **DENIED**.

New Orleans, Louisiana, this 1st day of April, 2009.

**KURT D. ENGELHARDT**
**United States District Judge**

---

[2] W-Industries also cites to *Fontenont v. Chevron U.S.A., Inc.*, 676 So.2d 557 (La. 1996) and two cases applying the Louisiana Supreme Court's opinion in that case: *Hudson v. Forest Oil Corp.*, 2003 WL 21276385 (E.D. La. 2003), *affirmed* 372 F.3d 742 (5th Cir. 2004), and *Trosclair v. Chevron, U.S.A., Inc.*, 161 F. Supp. 2d 739 (S.D. Tex. 2001). In all of these cases, courts were attempting to determine when a particular waiver of subrogation is valid under the LOAIA. Having determined in the instant case that there was no waiver of subrogation, the Court declines to consider any arguments made pursuant to the LOAIA and thus these cases are irrelevant. W-Industries also cites to *Total Marine Servs., Inc. v. Director, Office of Workers' Compensation Programs, U.S. Dept. Of Labor*, 87 F.3d 774 (5th Cir. 1996). This citation is perplexing, since that case concerned indemnification of a borrowed employee's formal employer and has nothing to do with waivers of subrogation. *Id.* at 776.